UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
BAYSIDE COMMUNITY AMBULANCE      :
CORPS., INC., a/k/a, BAYSIDE           :   **MEMORANDUM DECISION AND**
VOLUNTEER AMBULANCE CORPS.,         :   **ORDER**
                                                                    :
                 Plaintiff,              :   24-cv-2114 (BMC)
                                                                    :
        - against -                     :
                                                                    :
                                                                    :
GLEN OAKS VOLUNTEER AMBULANCE  :
CORPS., INC., and Does 1 through 10,    :
                                                                    :
             Defendants.          :
-------------------------------------------------------- X

**COGAN**, District Judge.

       This is a trademark infringement case by Bayside Volunteer Ambulance Corps.

("BVAC"), a nonprofit organization that previously provided ambulance services in Bayside,

Queens, against Glen Oaks Volunteer Ambulance Corps. ("GOVAC"), a nonprofit organization

that currently provides ambulance services in Bayside, Queens.  For the reasons set forth below,

GOVAC's motion to dismiss is granted in part and denied in part.

**SUMMARY OF AMENDED COMPLAINT**

       BVAC was founded to provide ambulance services to residents of Bayside, Queens.

Since its founding almost seventy years ago, BVAC has used the phrase "Bayside Volunteer

Ambulance Corps." (the "BVAC Mark" or the "Mark") in connection with its work.  BVAC no

longer provides ambulance services in Bayside but continues to provide medical training classes.

BVAC may resume providing ambulance services in the future.

       GOVAC was founded to provide similar services to various neighborhoods in Queens,

and continues to provide these services.  GOVAC began using the name "Bayside Glen Oaks

Volunteer Ambulance Corp." in 2023.  GOVAC also created a website for its organization at the address www.baysidevac.com.

BVAC alleges in its amended complaint that it "has taken extensive steps and has been successful in educating the public to associate the [BVAC] Mark with a single source, to wit, plaintiff [BVAC]."  BVAC explains that it has advertised its medical training classes in newspapers for decades with the BVAC Mark, BVAC's principal place of business is located in a prominent location in Bayside and displays the BVAC Mark on the exterior of the building, BVAC has engaged in community mass mailings twice a year for decades with the BVAC Mark, and BVAC engages in social media advertising with the BVAC Mark.  BVAC's annual advertising expenses have historically been approximately $1,700; BVAC is currently spending approximately $15,000 annually on advertising.

BVAC also alleges that the following historical facts demonstrate that the public associates the BVAC Mark with BVAC: the New York State government has granted BVAC funding and has listed BVAC in various Senate budget bills and laws; the New York City Council has recognized members of BVAC for community service and issued three Proclamations (in 1993, 2002, and 2005) recognizing BVAC's service to the community; when BVAC was still providing ambulance services, it responded to several thousand emergency calls a year and participated in fifteen to twenty community events each year at which BVAC displayed the BVAC Mark; and in a recent decade, BVAC generated over $2.3 million in revenue.  Additionally, BVAC asserts that it has received unsolicited media coverage for its services to the community, including more than fifty newspaper articles in Newsday, Daily News, Queens Chronical, and Bayside Times.  Furthermore, the Bayside Times and Queens Courier have provided BVAC advertising space for free.  BVAC claims that it has exclusively

used the BVAC Mark for almost seventy years, except for GOVAC's use of the Mark commencing in 2023.

BVAC notes that, in a July 5, 2022 Office Action, the United States Patent and Trademark Office ("USPTO") wrote that BVAC had "responded to the Primarily Geographic Descriptive and alternative Primarily Merely Descriptive refusals, as well as the 2(f) advisory by claiming 2(f) acquired distinctiveness.  This response has been made of record."  The USPTO removed the "descriptive" issue from its July 5, 2022 Office Action.  BVAC asserts that this amounted to the USPTO "agreeing, determining, and concluding that the [BVAC] Mark had acquired distinctiveness."

BVAC alleges that, based on GOVAC's use of the name "Bayside Glen Oaks Volunteer Ambulance Corp." and its use of a website with a similar name to BVAC's, GOVAC's conduct (1) constitutes trademark infringement and mark dilution in violation of the Lanham Act, (2) violates the Anti-Cybersquatting Consumer Protection Act (the "ACPA"), (3) violates New York General Business Law § 349, (4) amounts to false advertising and fraud, (5) violates New York Civil Rights Law §§ 50 and 51, (6) violates other New York State laws, and (7) constitutes unfair competition.

In response to BVAC's amended complaint, GOVAC filed a motion to dismiss, arguing that the BVAC Mark is a primarily geographically descriptive term, and as such is not entitled to trademark protection absent demonstration that it has acquired a secondary meaning, which BVAC has not sufficiently alleged.

## LEGAL STANDARD

A court will grant a motion to dismiss when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S.

3

662, 678 (2009) (quotation omitted).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Id. (citation omitted).  In reviewing a motion to dismiss, "a court

must accept as true all [factual] allegations contained in a complaint" but "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

(citation omitted).  In deciding a motion to dismiss, the court may only consider documents that

are referenced in the complaint, documents that the plaintiff relied on in bringing suit, or matters

of which judicial notice may be taken, including official records of the USPTO.  See Chambers

v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Telebrands Corp. v. Del Labs., Inc., 719

F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010).

## DISCUSSION

### I.   Trademark Infringement and Mark Dilution Claims

To survive a motion to dismiss on a claim for trademark infringement or mark dilution

under the Lanham Act, a plaintiff must plead facts tending to show that it has a valid mark

entitled to protection and that the defendant's use of the mark "is likely to cause confusion, or to

cause mistake, or to deceive as to the affiliation, connection, or association of [the user] with

another person. . . ."  15 U.S.C. §§ 1125(a)(1)(A) and (C); see Time, Inc. v. Petersen Pub. Co.,

173 F.3d 113, 117 (2d Cir. 1999) (quoting Arrow Fastener Co. v. Stanley Works, 59 F.3d 384,

390 (2d Cir. 1995)).  "A mark is entitled to protection when it is inherently distinctive; if the

mark is 'merely descriptive,' . . . it qualifies for protection only if it has acquired secondary

meaning." Id. (quoting 15 U.S.C. § 1052(e)).

A mark is "inherently distinctive," and thus entitled to protection, if it is suggestive,

arbitrary, or fanciful.  United States Pat. & Trademark Off. v. Booking.com B.V., 591 U.S. 549,

553 (2020) (quotation omitted).  Marks consisting of geographic terms are considered descriptive

4

and must acquire a secondary meaning to become distinctive and be entitled to protection.  See Forschner Grp., Inc. v. Arrow Trading Co. Inc., 30 F.3d 348, 353-54 (2d Cir. 1994) (citing Bank of Texas v. Commerce Southwest, Inc., 741 F.2d 785 (5th Cir. 1984) (BANK OF TEXAS descriptive); In re Canada Dry Ginger Ale, Inc., 86 F.2d 830 (C.C.P.A. 1936) (map of Canada geographically descriptive); Warwood v. Hubbard, 218 Mont. 438, 709 P.2d 637 (1985) (YELLOWSTONE OUTFITTERS descriptive)).

BVAC fails to plead facts sufficient to show that the BVAC Mark is suggestive, arbitrary, or fanciful.  BVAC does not plead any facts tending to show that "Bayside" is not descriptive of the geographic location of its business (ambulance corps. or otherwise).  "[A] phrase or term that is descriptive of the geographic origin of a product will not receive trademark protection absent proof of secondary meaning."  Forschner, 30 F.3d at 353 (citations omitted).

BVAC's argument that the BVAC Mark is suggestive rather than descriptive because BVAC is no longer, in fact, a voluntary ambulance corps., is unpersuasive.  BVAC's use of the BVAC Mark for its organization devoid of a volunteer ambulance corps. is more akin to a situation in which a mark owner assigns the mark to another person or business "in connection with a different goodwill and different product," which "would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing."  Marshak v. Green, 746 F.2d 927, 929 (2d Cir. 1984).  A mark cannot receive protection if the owner of the mark uses it in such a way that separates the mark from its goodwill.  See id. (citation omitted).  BVAC cannot have it both ways: either the Mark is suggestive because BVAC is not a volunteer ambulance corps., and therefore the Mark carries no protection; or the Mark *does* describe BVAC's services, and is thus descriptive.

Furthermore, the fact that the USPTO wrote that BVAC's response to the USPTO's rejection of the BVAC Mark as descriptive was "made of record," on an issue not marked as final, does not tend to show distinctiveness.  "In this Circuit, decisions of the USPTO are given a degree of deference" but an "initial determination carries no weight on [a] motion to dismiss." Lebewohl v. Heart Attack Grill LLC, 890 F. Supp. 2d 278, 292 (S.D.N.Y. 2012) (citations omitted); accord, Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 347 (S.D.N.Y. 2014).

Having rejected BVAC's argument that the BVAC Mark is suggestive, arbitrary, or fanciful, the question remains whether the BVAC Mark has acquired a secondary meaning. "Whether secondary meaning has attached to a mark is a question of fact," Arrow Fastener Co., 59 F.3d at 393, and thus is "ill-suited for resolution at the motion to dismiss stage," In re Bear Stearns Mortg. Pass-Through Certificates Litig., 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012) (citation omitted).  See, e.g., Kaplan, 16 F. Supp. 3d at 348.  Accordingly, defendant's motion to dismiss is denied as to Counts I and II.[1]

## II.     ACPA Claim

To survive a motion to dismiss on its ACPA claim, BVAC must allege facts sufficient to show that "(1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark."  Kaplan, 16 F. Supp. 3d at 350 (quotation omitted).  Although the same trademark infringement and mark dilution analysis applies to whether the BVAC Mark is distinctive, an ACPA claim may not proceed if the

---

[1] I do not reach the question of whether defendant's conduct is likely to cause confusion.  "*If* a mark is entitled to protection, *then* the inquiry turns to whether 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.'"  Arrow Fastener Co., 59 F.3d at 390-91 (quoting Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993)) (emphasis added).  Thus, if this Court finds that the BVAC Mark is entitled to protection, it will turn to the question of likelihood of confusion.

plaintiff has "proffered only conclusory allegations in support of" the other ACPA claim requirements.  Id.

BVAC's allegations in the amended complaint consist of the fact that GOVAC has a similar website address to BVAC's website address and the BVAC Mark, as well as the conclusory statements that GOVAC created this website to divert consumers from BVAC's website, GOVAC had a bad faith intent to profit from the BVAC Mark, and GOVAC engaged in bad faith by acquiring the website address before it was licensed to provide ambulance services in Bayside.  These statements, without more, do not sufficiently allege a "bad faith intent to profit."

The Court will not entertain conclusory allegations, see Iqbal, 556 U.S. at 678, and the only facts BVAC includes concerning its ACPA claim in its amended complaint are that GOVAC (1) uses www.baysidevac.com as its website address, and (2) has done so since before it was authorized to provide ambulance services in Bayside.  These facts are not sufficient to show that GOVAC had a bad faith intent to profit from the BVAC Mark.  "Conclusory allegations that the defendant[ ] registered a confusingly similar domain name with the bad faith intent to profit and with full knowledge of plaintiff's exclusive rights in the [ ] mark . . . is insufficient to establish the bad faith intent to profit under the ACPA."  Kaplan, 16 F. Supp. 3d at 351 (cleaned up).  These are exactly the allegations BVAC pleads here, and they too are insufficient to survive a motion to dismiss.  The Court thus dismisses Count III of BVAC's amended complaint.

## III.    New York General Business Law § 349

BVAC's claim under New York General Business Law § 349 also does not survive GOVAC's motion to dismiss.  Section 349 "provides a cause of action for any person injured by '[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the

furnishing of any service.'" <u>Chen v. Dunkin' Brands, Inc.</u>, 954 F.3d 492, 500 (2d Cir. 2020)

(quoting N.Y. Gen. Bus. Law §§ 349(a), (h)).  Corporate competitors have standing to sue under

§ 349 "so long as some harm to the public at large is at issue."  <u>Securitron Magnalock Corp. v.</u>

<u>Schnabolk</u>, 65 F.3d 256, 264 (2d Cir. 1995).

BVAC does not allege a single fact pertaining to the public's harm from GOVAC's

allegedly deceptive acts, instead stating conclusively that GOVAC's conduct will harm the

public by misleading people about the source of GOVAC's services.  "Claims that arise out of a

trademark infringement action, and disputes between competitors where the core of the claim is

harm to another business as opposed to consumers, both constitute situations which courts have

found to reflect a public harm . . . too insubstantial to satisfy the pleading requirements of §

349." <u>Gucci Am., Inc. v. Duty Free Apparel, Ltd.</u>, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003)

(citations omitted).  Such is the case here.   Accordingly, the Court dismisses Count IV of

BVAC's amended complaint.

## IV.    False Advertising and Fraud Claims

To prevail against a motion to dismiss on a false advertising claim, a plaintiff must plead

facts tending to show that either "(1) the advertising is literally false as a factual matter, or (2)

although the advertisement is literally true, it is likely to deceive or confuse customers."  <u>S.C.</u>

<u>Johnson & Son, Inc. v. Clorox Co.</u>, 241 F.3d 232, 238 (2d Cir. 2001) (citations omitted).

Similarly, on a fraud claim, a plaintiff must plead facts tending to show "(1) that the defendant

made a material misrepresentation, with (2) scienter (i.e., the intent to defraud), and (3) that the

plaintiff relied on the misrepresentation to her detriment (i.e., she suffered an injury proximately

caused by the misrepresentation)."  <u>In re Amla Litig.</u>, 282 F. Supp. 3d 751, 759 (S.D.N.Y. 2017).

BVAC fails to plead facts sufficient to show claims for false advertising and fraud.  On

the false advertising claim, BVAC does not plead any facts regarding the literal falsity of any of

GOVAC's advertising, instead proceeding under the "likely to deceive or confuse consumers" standard.  When a plaintiff seeks to establish false advertising by likelihood of deception or confusion, "a district court *must* rely on extrinsic evidence of consumer deception or confusion to support a finding of an implicitly false message."  Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007) (cleaned up) (emphasis in original).  BVAC does not plead any facts tending to show extrinsic evidence of consumer deception or confusion.  Nor, for that matter, does BVAC plead any facts at all tending to show consumer deception or confusion.  This omission also defeats BVAC's fraud claim: there are no facts alleged in the amended complaint tending to show that any customer relied on GOVAC's alleged misrepresentations.

BVAC's arguments to the contrary are not persuasive.  The naked assertions that GOVAC's name and website are similar to the BVAC Mark are not sufficient to draw an inference that customers were confused by the similarity or relied on a misrepresentation that GOVAC was affiliated with BVAC.  See Lokai Holdings LLC v. Twin Tiger USA LLC, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (dismissing false advertisement claim because claimant "offers no facts that show that consumers or retailers believe" the alleged misrepresentation). The Court thus grants GOVAC's motion to dismiss as to Counts V and VII of BVAC's amended complaint.

## V.      New York Civil Rights Law Claims

BVAC's claims under New York Civil Rights Law §§ 50 and 51 are baseless.  New York Civil Rights Law § 50 prohibits a person, firm, or corporation from using "the name, portrait, picture, likeness, or voice of any *living person*" for advertising or trade purposes without the person's consent.  N.Y. Civ. Rights Law § 50 (emphasis added).  Section 51 of the New York Civil Rights Law permits individuals whose name, portrait, picture, likeness or voice is used in

violation of § 50 to maintain an equitable action against the user as well as to sue and recover damages.  Id. § 51.  Amazingly, BVAC alleges a claim under these statues based on its assertion that GOVAC used BVAC's name in advertising or trade without BVAC's consent.  Nowhere does BVAC allege that it is a "living person" or that its name includes that of a living person.  In fact, BVAC states in its amended complaint that it is a "Not-for-Profit Corporation" and that "Bayside" is a geographic area.  Given BVAC's failure to plead any facts tending to show that GOVAC used the name of a living person, Count VI of BVAC's amended complaint is dismissed.

## VI.   Statutory Violations Claims

In Count VIII, BVAC alleges claims under eleven additional sections of New York General Business Law.  BVAC fails to state a claim under each of these statutes, except New York General Business Law § 360-l, for the following reasons.

### A.   New York General Business Law § 133

BVAC fails to state a claim under New York General Business Law § 133 because this statute prohibits the use of "any address or designation of location in the community which may deceive or mislead the public as to the true address or location of [a] person, firm, or corporation."  N.Y. Gen. Bus. Law § 133.  BVAC has not pled any facts tending to show that GOVAC does not operate in either of the locations GOVAC uses in its name (Bayside or Glen Oaks), requiring dismissal of this claim.

### B.   New York General Business Law §§ 350 and 350-a

Plaintiff's claims under New York General Business Law §§ 350 and 350-a fail for the same reason as plaintiff's § 349 claim.  New York General Business Law §§ 350 and 350-a also require that corporate competitors show standing by alleging "some harm to the public at large." Kuklachev v. Gelfman, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (quoting Securitron

10

Magnalock Corp., 65 F.3d 256 at 257.  Because BVAC does not allege a single non-conclusory fact pertaining to the public's harm from GOVAC's allegedly deceptive acts, BVAC lacks standing to assert claims under New York General Business Law §§ 350 and 350-a.

      **C.     New York General Business Law § 135**

New York General Business Law § 135 prohibits the use of a "benevolent, humane, or charitable organization . . . or a name so nearly resembling it as to be calculated to deceive the public with respect to any such corporation."  N.Y. Gen. Bus. Law § 135.  This claim fails because BVAC does not allege that GOVAC uses the same name, nor does it allege sufficient facts to show that GOVAC's name is calculated to deceive the public, see supra Section IV.

      **D.     New York General Business Law § 137**

New York General Business Law § 137 prohibits, in relevant part, the unauthorized use on a motor vehicle of the name "of any society, order or organization of ten years standing in the state or New York."  N.Y. Gen. Bus. Law § 137.  This claim also fails because BVAC does not allege that GOVAC uses its same name; rather, BVAC's entire amended complaint is premised on the argument that GOVAC infringes on (or otherwise violates) the BVAC Mark by using a *similar* name.  Such conduct, even if adequately pled, is not prohibited by New York General Business Law § 137.

      **E.     New York General Business Law §§ 360, 360-k, and 360-l**

To make out a trademark infringement claim under New York General Business Law § 360-l, a plaintiff must allege the same elements as claims for trademark infringement under the Lanham Act.  Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 463, 494 (S.D.N.Y. 2008), aff'd in part, rev'd in part, 600 F.3d 93 (2d Cir. 2010).  To proceed on a mark dilution claim, the elements under § 360-l and the Lanham Act differ, but both require that a mark be distinctive. See Tiffany (NJ) Inc., 600 F.3d at 111.  A claim for injury to business reputation under § 360-l

requires a plaintiff to plead the same elements as a claim for mark dilution.  Winner Int'l LLC v. Omori Enterprises, Inc., 60 F. Supp. 2d 62, 73 (E.D.N.Y. 1999) (citing Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1030 (2d Cir. 1989)).  Because the question of whether the BVAC Mark has acquired secondary meaning remains, the Court will not dismiss BVAC's claims under New York General Business Law § 360-l.  Sections 360 and 360-k do not provide separate causes of action under which BVAC may proceed.

### F.    New York General Business Law § 390-b

New York General Business Law § 390-b makes it unlawful to use the internet "to solicit, request or collect identifying information by deceptively representing [oneself], either directly or by implication, to be a business or a governmental entity" when unauthorized by that business or government entity.  N.Y. Gen. Bus. Law § 390-b(3).  BVAC's claim under New York General Business Law § 390-b is dismissed because BVAC fails to plead any facts at all tending to show that GOVAC solicited, requested, or collected people's identifying information on the internet.

### G.    New York General Business Law § 392-b

Under New York General Business Law § 392-b, it is illegal to put a false description on any merchandise, labels, or any other packaging of an article for sale.  BVAC's claim under § 392-b must be dismissed because BVAC does not plead any facts alleging that GOVAC put a false description on any such items.

### H.    New York General Business Law § 396-b

New York General Business Law § 396-b prohibits corporations (among other entities) that are "engaged in the business of dealing in any property" from advertising about any such property "unless it is stated in any such advertisement that the advertiser is a dealer in such property" or that is clear from the context of that advertisement.  N.Y. Gen. Bus. Law § 396-b. BVAC does not allege that GOVAC deals in property, has advertised any of its property, or that

it has advertised property without stating that it is the dealer of the property.  Accordingly, this claim is dismissed.

## VII.    Unfair Competition Claim

BVAC does not indicate whether it brings its unfair competition claim under the Lanham Act or New York common law.  Under either claim, the movant must plead facts tending to "show a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing product" as well as bad faith.  CDC Newburgh Inc. v. STM Bags, LLC, 692 F. Supp. 3d 205, 225 (S.D.N.Y. 2023) (citation omitted).  As discussed in the context of BVAC's false advertising and fraud claims, supra Section IV, BVAC fails to plead facts tending to show that GOVAC has likely confused or deceived the consuming public.  The Court will therefore also grant GOVAC's motion to dismiss Count IX of BVAC's amended complaint.[2]

## CONCLUSION

For the foregoing reasons, GOVAC's motion to dismiss [19] BVAC's amended complaint [18] is denied as to Counts I and II, as well as BVAC's claim under New York General Business Law § 360-l.  GOVAC's motion to dismiss [19] is granted as to Counts III, IV, V, VI, VII, the remainder of VIII, and IX.  By separate order, the Court will enter a discovery schedule for the parties to proceed on the remaining claims.

 SO ORDERED.

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
         October 9, 2024

---

[2] BVAC's assertion that GOVAC failed to raise and argue for dismissal of this claim, waiving GOVAC's ability to argue that the unfair competition claim should be dismissed, is unavailing.  GOVAC specifically raised arguments pertaining to BVAC's failure "to assert anything false or misleading about GOVAC's use of the [BVAC Mark]," the element of an unfair competition claim that this Court finds BVAC failed to adequately plead (likelihood of confusion or deception).